**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHANE MUDALIAR,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,[1]<br><br>　　　　Defendant. | Case No.: 1:20-cv-1692 JLT BAM<br><br>ORDER DECLINING THE FINDINGS AND RECOMMENDATIONS, GRANTING PLAINTIFF'S APPEAL, AND REMANDING THE ACTION FOR FURTHER PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF SHANE MUDALIAR AND AGAINST DEFENDANT FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY<br><br>(Docs. 17, 20, 22) |

Shane Mudaliar seeks judicial review of a final decision denying his application for supplemental security income under Title XVI of the Social Security Act. (Doc. 17.) Plaintiff asserts the administrative law judge erred in evaluating Plaintiff's subjective statements and a third-party witness statement. (*Id.* at 1, 7-13.) He requests the administrative decision be reversed and remanded. (*Id.* at 13.) The Commissioner asserts the ALJ properly addressed the evidence and the Court should affirm the decision. (Doc. 20 at 5-10.) For the reasons set forth below, the decision is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Frank Bisignano as the defendant in this case.

1

## I. Decision of the ALJ

The ALJ evaluated Plaintiff's application using the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. (Doc. 13-2 at 27-37.) First, the ALJ determined Plaintiff did not engage in substantial gainful activity after the application date of August 26, 2016. (*Id.* at 27.) Second, the ALJ found Plaintiff's severe impairments included "temporomandibular joint disorder (TMJ); depressive disorder; schizophrenia; anxiety disorder; attention deficit hyperactivity disorder (ADHD)." (*Id.*) At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (*Id.* at 29-31.) Next, the ALJ found:

> [T]he has the residual functional capacity to perform work across all exertional level as defined in 20 CFR 416.967 with the following modifications: can perform simple and routine tasks; no work at a production rate (no work with high production quotas that need to be completed within strict time deadlines such as what you might find on an assembly line); occasionally interact with supervisors; occasionally interact with coworkers, but not in a tandem, team or group setting; as well as occasionally interact with the public, but only on a superficial level (such as greeting customers or directing a customer on how to get to the nearest restroom).

(*Id.* at 31.) At step four, the ALJ noted Plaintiff did not have past relevant work to evaluate. (*Id.* at 36.) However, with the identified RFC, the ALJ determined at step five that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.*)

## II. Findings and Recommendations

Plaintiff asserts that the ALJ "failed to offer legitimate reasons for rejecting Plaintiff's subjective complaints." (Doc. 17 at 7-11.) However, the magistrate judge found "the ALJ appropriately discounted Plaintiff's symptom testimony…." (Doc. 22 at 14.) First, the magistrate judge determined that the ALJ properly considered a "significant gap in treatment" in discounting Plaintiff's testimony. (*Id.* at 9-10 [internal quotation marks omitted].) Second, the magistrate judge found the ALJ "properly discounted Plaintiff's symptoms testimony by contrasting Plaintiff's allegations of disabling symptoms with medical evidence suggesting that Plaintiff's TMJ and mental impairments produced relatively normal findings." (*Id.* at 12; *see also id.* at 10-13.) The magistrate judge observed the ALJ also purported to consider Plaintiff's activities, but found the ALJ "erred in

2

using Plaintiff's daily activities to discount Plaintiff's symptoms testimony." (*Id.* at 14.) Nevertheless, the magistrate judge determined "this is harmless error as the ALJ also discounted Plaintiff's symptoms testimony based upon a gap in treatment and the objective medical evidence." (*Id.*)

Plaintiff also argued the ALJ erred in evaluating the lay witness statement by Pushpa Mudaliar, Plaintiff's mother.[2] (Doc. 17 at 11-13.) The magistrate judge rejected the argument, finding: "[T]he ALJ did not discredit the statement based upon Ms. Mudahiar's lack of medical training or credentials, but instead discounted it because the statement was based upon 'casual observation' rather than 'objective medical examination and testing' as well as contradiction by the broader medical record." (Doc. 22 at 16, quoting AR 32 [Doc. 13-2 at 36].) The magistrate judge also determined: "As Ms. Mudahiar's reporting was largely duplicative of Plaintiff's own symptoms testimony, the ALJ stating that the statement is 'not persuasive for the same reasons set forth above in finding the claimant's allegations to be less than wholly supportable' is sufficient." (*Id.* at 17, quoting AR 32 [Doc. 13-2 at 36].) Consequently, the magistrate judge found Plaintiff's argument that the ALJ erred in discounting the lay witness statement was "unavailing." (*Id.*)

The magistrate judge concluded "the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards." (Doc. 22 at 18.) Therefore, the magistrate judge recommended that the Court deny Plaintiff's appeal and enter judgment in favor of the Commissioner. (*Id.*)

### III. Objections

Plaintiff filed objections to the Findings and Recommendations, asserting the "finding that the ALJ properly evaluated Plaintiff's subjective complaints should not be adopted." (Doc. 25 at 1, emphasis omitted.) Plaintiff contends, "the Magistrate Judge's recommendation and the ALJ's decision fails to acknowledge that the referenced gap in treatment is prior to the period assessed by the ALJ." (*Id.* at 2.) Plaintiff notes the ALJ found Plaintiff was "not been under a disability, as defined in the Social Security Act, since August 26, 2016," and argues that "[t]he Magistrate Judge fails to explain why a gap in treatment, prior to the period adjudicated by the ALJ, should undermine this

---

[2] The ALJ refers to Ms. Mudaliar as Ms. "Mudahiar," which appears to be a scrivener's error adopted by the magistrate judge. (*See* Doc. 13-2 at 316; Doc. 20 at 10.)

claim." (*Id.*) Plaintiff asserts, "In combination with the fact that the gap in treatment occurred after a failed attempt at counseling which worsened his symptoms [], this treatment gap is not a clear and convincing reason for rejecting the claimant's alleged symptoms." (*Id.* at 3, citing AR 53-54 [Doc. 13-2 at 57-58].) Plaintiff also objects to the finding that objective medical evidence supports the ALJ's analysis, asserting that "the Magistrate Judge's finding simply pastes the ALJ's summary of the treatment records, in which the ALJ made no findings relating to Plaintiff's specific alleged symptoms and limitations." (*Id.* at 3.)

Plaintiff maintains that the ALJ failed to properly evaluate the opinion from Ms. Mudaliar. (Doc. 25 at 4, emphasis omitted.) Plaintiff argues that the magistrate judge's finding that "the ALJ could properly discount the statement as 'based upon casual observation' rather than an objective medical assessment … flies in the face of the regulations which specifically require evaluation of lay witness statements that are based on personal observations." (*Id.*) Plaintiff contends the magistrate judge erred by finding the ALJ properly rejected the statement from Ms. Mudaliar as "not consistent with the broader medical record," because "this broad, unsupported assertion is not sufficiently specific to support the rejection of an opinion from a non-medical source." (*Id.* at 5.) Finally, Plaintiff argues that because the ALJ erred in evaluating his subjective statements, the same grounds could not be invoked to reject the statement from his mother. (*Id.* at 4.) Thus, Plaintiff concludes the ALJ did not identify any proper germane reason to reject the lay witness statement. (*Id.* at 5-6.)

## IV.    Discussion and Analysis

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations..." 28 U.S.C. § 636(b)(1). If a party files objections, "the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made." *Id.* A de novo review requires the Court to "consider[] the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

### A.    Evaluation of Plaintiff's subjective statements

In evaluating a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504

1  F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).
2  Second, if there is no evidence of malingering, the ALJ must set forth clear and convincing reasons for
3  rejecting subjective complaints. *Id.* at 1036.  Here, the ALJ found Plaintiff's "medically determinable
4  impairments could reasonably be expected to cause the alleged symptoms," and did not identify
5  evidence of malingering.  (Doc. 13-2 at 32.)  Therefore, the ALJ was required to identify clear and
6  convincing reasons for rejecting Plaintiff's testimony.

7        An ALJ may consider many factors to assess a claimant's statements, including, for example:
8  (1) the objective medical evidence; (2) the claimant's reputation for truthfulness; (3) inconsistencies in
9  testimony or between testimony and conduct; (4) the claimant's daily activities; (5) an unexplained, or
10 inadequately explained, failure to seek treatment or follow a prescribed course of treatment; and (6)
11 testimony from physicians about the nature, severity, and effect of the symptoms of reported by a
12 claimant.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d
13 947, 958-59 (9th Cir. 2002).  The ALJ considered Plaintiff's treatment history, including a gap in
14 treatment; the objective medical record; and Plaintiff's daily activities.  (Doc. 13-2 at 32-33.)  However,
15 the parties disputed whether these constitute clear and convincing reasons to support the rejection of
16 Plaintiff's subjective complaints.  (*See* Doc. 17 at 7-11; Doc. 20 at 5-10.)

17            1.     Plaintiff's daily activities

18       A claimant's level of activity may support an ALJ's determination to give less weight to his
19 subjective statements.  When a claimant spends a substantial part of the day "engaged in pursuits
20 involving the performance of physical functions that are transferable to a work setting, a specific
21 finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of*
22 *the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair*, 885 F.2d at 603).  The Ninth
23 Circuit determined that a claimant's activities may be used to support an adverse credibility
24 determination where the ALJ finds the activities contradict the severity of the symptoms reported.
25 *See, e.g., Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *Stubbs-*
26 *Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).  Thus, the Ninth Circuit determined a
27 claimant's level of activity can form the basis for an ALJ to discount subjective statements where: (1)
28 the activities contradict a claimant's testimony *or* (2) the level of activity "meet[s] the threshold for

transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ did not identify inconsistencies between Plaintiff's testimony and his reported activities, or find that the level of activity in which Plaintiff engaged was transferrable to work. As a result, Plaintiff's level of activity was not a clear and convincing reason for rejecting Plaintiff's testimony.

### 2. Treatment received

When evaluating a claimant's subjective statements, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c). The treatment a claimant received, especially when routine or conservative, is a legitimate consideration in a credibility finding. *Parra v. Astrue, 481 F.3d 742, 751* (9th Cir. 2007). Importantly, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*, 2018 WL 1567814 at *5 (E.D. Cal. Mar. 31, 2018) (quoting *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015)). Thus, an ALJ errs in rejecting subjective complaints on these grounds where he fails "failed to explain why [the treatment] is routine or conservative or what more aggressive treatment was available and appropriate for Plaintiff." *Candice C. v. Saul*, 2019 WL 5865610 at *4 (C.D. Cal. Nov. 8, 2019).

The ALJ observed that Plaintiff received "only medication management for his mental heath impairments." (Doc. 13-2 at 35.) To the extent the ALJ suggests the treatment Plaintiff received was routine and/or conservative in nature, such a finding is unsupported by the record. Plaintiff's physician prescribed Zyprexa and Alprazolam (Xanax). (*See, e.g.,* Doc. 13-2 at 34, 444, 512, 524, 617, 636.) Courts have determined such medication is not properly characterized as conservative care. *See Gentry v. Colvin*, 2013 WL 6185170, at *12 (E.D. Cal. Nov. 26, 2013) ("Prescription medication such as Zyprexa, however, is not conservative in the same manner as over-the-counter pain relievers," the latter of which may be used to discount testimony concerning the severity of a claimant's pain); *Garcia v. Colvin,* 2015 WL 4450901, at *3 (C.D. Cal. July 20, 2015) (finding the ALJ erred in considering treatment in evaluating credibility because "Xanax prescriptions are not considered conservative treatment"); *see also Baker v. Astrue*, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Where mental activity is involved, administering medications that can alter behavior shows anything but

6

1  conservative treatment."). The ALJ also did not provide any findings regarding how Plaintiff's
2  "medication management" conflicted with his hearing testimony regarding the severity of his
3  symptoms. Thus, the treatment received was not a clear and convincing reason to reject Plaintiff's
4  testimony. *See Garcia v. Comm'r of Soc. Sec.*, 2022 WL 2110709, at *7 (E.D. Cal. June 9, 2022)
5  (finding the ALJ erred evaluating the treatment a claimant received for mental impairments because
6  "the ALJ [did] not specifically mention any information about the treatment by medication that would
7  support the finding of the treatment being routine and conservative").

         3.      Gap in treatment

9        An unexplained or inadequately explained failure to seek treatment may support an adverse
10 credibility finding unless there is a showing of a good reason for the failure. *Orn*, 495 F.3d at 638.
11 Addressing Plaintiff's subjective complaints, the ALJ stated: "The record reflects a significant gap in
12 the claimant's history of treatment, which is not consistent with disabling levels of symptoms. He did
13 not get treatment between September 2014 and January 2015." (Doc. 13-2 at 33, citations omitted.)
14       Importantly, Plaintiff seeks supplemental security income. (Doc. 13-2 at 25.) For SSI benefits,
15 the relevant period begins on the application date and ends on the date of the decision. *See Koster v.*
16 *Comm'r Soc. Sec.*, 643 Fed. App'x 466, 478 (6th Cir. 2016) ("[f]or purposes of SSI, which is not
17 retroactive, the relevant period here is September 24, 2010, the date [the claimant] filed his protective
18 application, to August 15, 2012, the date of the ALJ's decision"); *Dunson v. Comm'r Soc. Sec.*, 615
19 Fed. App'x 65, 67, n.1 (3rd Cir. 2015) (identifying the adjudicated period for SSI as the application
20 date through the decision date). Thus, the relevant period here began with Plaintiff's application date
21 of August 26, 2016. (*See* Doc. 13-2 at 27.) It is unclear how the identified three-month gap in
22 treatment—more than a year a half prior to the adjudicated period—is relevant to the ALJ's analysis.
23       An ALJ "will not find an individual's symptoms inconsistent with the evidence in the record
24 on this basis without considering possible reasons he or she may not comply with treatment or seek
25 treatment consistent with the degree of his or her complaints." *Odenwelder v. King*, 2025 WL 333501,
26 at *10, n.9 (E.D. Cal. Jan. 29, 2025) (quoting Social Security Ruling 16-3P, 2016 SSR LEXIS 4).
27 Towards this end, an ALJ "may need to contact the individual regarding the lack of treatment or, at an
28 administrative proceeding, ask why he or she has not complied with or sought treatment in a manner

consistent with his or her complaints." *Id.* There is nothing in the ALJ's decision to suggest the ALJ considered why Plaintiff may not have sought treatment during the identified period, to the extent the ALJ deemed the gap relevant to the adjudicated period. Consequently, the Court is unable to find the gap in treatment is a clear and convincing reason for rejecting Plaintiff's subjective statements. *See, e.g., Desiderio v. Comm'r of Soc. Sec. Admin.,* 2019 WL 549458, at *10 (D. Ariz. Feb. 12, 2019) (finding a one-year gap in treatment was insufficient to justify discounting a plaintiff's symptom testimony where the ALJ did not inquire about the gaps or inconsistencies at the hearing, and cited to no evidence in the record that may explain the gaps).

### 4. Objective medical evidence

The sole remaining factor considered by the ALJ is the objective medical evidence. (*See* Doc. 13-2 at 32-33.) In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute specific and substantial reasons that undermine … credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). A claimant's subjective statements "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence ...." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). For this reason, the ALJ's analysis is insufficient.

### 5. Conclusion

The ALJ failed to meet the burden to identify clear and convincing reasons supporting the adverse credibility determination, which were "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Fair*, 885 F.2d 597, 603 (9th Cir. 1989). Consequently, the Court is unable to find the ALJ's decision is supported by substantial evidence in the record.

**B.   Lay witness testimony**

The ALJ must consider statements of "non-medical sources" including spouses, parents, and other relatives in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.913(d)(4); *see also Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is

disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to do work."). As a general rule, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis, internal citations omitted). To discount the testimony of a lay witness, the ALJ must give specific, germane reasons for rejecting the opinion of the witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Addressing the statement from Ms. Mudaliar, Plaintiff's mother, the ALJ indicated:

> This statement has been given little weight, as it is a lay opinion based upon casual observation, rather than objective medical examination and testing. Further, it is outweighed by the accumulated medical evidence regarding the extent to which the claimant's impairments limit his functional abilities. Ultimately, this statement is not persuasive for the same reasons set forth above in finding the claimant's allegations to be less than wholly supportable.

(Doc. 13-2 at 36.) Plaintiff contends these are not legally sufficient reasons for rejecting evidence from a lay witness. (Doc. 17 at 11-13; Doc. 25 at 4-6.) The Commissioner argues that "[t]he ALJ provided germane reasons for rejecting the testimony of his mother." (Doc. 20 at 10, citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).)

### 1.     Lay opinion

The magistrate judge found that the ALJ did not discredit the witness statement "based upon Ms. [Mudaliar's] lack of medical training or credentials…". (Doc. 22 at 16.) However, this finding appears in direct contradiction with the ALJ's decision, which indicated that little weight was given "*as it is a lay opinion…*". (Doc. 13-2 at 36, emphasis added.) In other words, the ALJ gave little weight *because* Ms. Mudaliar offered a lay opinion based upon her observations of Plaintiff. Indeed, the Commissioner acknowledges that "one of the reasons the ALJ provided" was that "Ms. Mudaliar was not a medical source." (Doc. 20 at 10.)

The Regulations specifically instruct all administrative law judges to consider testimony from "non-medical sources" who have an opportunity to observe the claimant. *See* 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, the fact that Ms. Mudaliar did not have medical training— and based her statements upon observations of her son—is not a proper reason to reject her testimony. *See Dodrill*, 12 F.3d at 919 (explaining the Regulations instruct the ALJ to "consider observations by *non-*

9

*medical sources* as to how an impairment affects a claimant's ability to work") (emphasis added).

### 2. The medical evidence

The ALJ found the statement from Ms. Mudaliar was "outweighed by the accumulated medical evidence," suggesting there were inconsistencies between her statement and the medical evidence. (Doc. 13-2 at 36.) However, the Ninth Circuit determined an ALJ may not reject the statements of lay witness only upon the grounds that the "medical records did not corroborate" the symptoms alleged. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court concluded rejecting lay witness statements for this reason "violates SSR 88-13, 1899 SSR LEXIS 14 which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." *Id.* (emphasis in original). Courts have criticized the rejection of lay witness statements on the grounds that the statements are inconsistent with the medical record, particularly where the ALJ fails to specifically identify the inconsistencies.  *See, e.g., Feeney v. Colvin,* 2014 WL 463798, *7 (E.D. Cal. Feb. 4, 2014) (acknowledging "inconsistency with the medical evidence may be a reason to reject lay witness testimony," but finding substantial evidence did not support the ALJ's analysis of the lay witness testimony where the ALJ did not identify "what evidence contradicts" the lay witness statement); *Noa v. Berryhill*, 2018 WL 1696819 at *7-8 (N.D. Cal. Apr. 6, 2018) (finding error where the ALJ failed to identify what portions of the lay witness testimony was inconsistent with the medical record).  The Court is unable to find the reasoning of the ALJ was sufficiently specific, and the unidentified inconsistency does not support the ALJ's decision. *See Bruce*, 557 F.3d at 1115; *Feeney*, 2014 WL 463798, at *7.

### 3. Reasoning applied to reject Plaintiff's testimony

The ALJ also purports to rely upon the same reasoning identified to reject Plaintiff's statements. Where lay witness testimony mirrors the claimant's testimony, and the claimant is found not to be credible, the ALJ may reject the lay witness testimony for that reason alone. *See Valentine*, 574 at 694 (holding that ALJ gave a germane reason for rejecting the testimony of the claimant's wife where her testimony was similar to claimant's own complaints that were properly rejected).  However, as discussed above, the ALJ did not properly reject Plaintiff's subjective complaints.  Consequently, the ALJ's reasons do not support the analysis of Ms. Mudaliar's statements.

**C.     Remand for further proceedings**

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citation omitted). Plaintiff requests the matter be remanded for further proceedings. (Doc. 17 at 13.)

The ALJ's failure to properly evaluate the testimonial evidence from Plaintiff and his mother impacted the residual functional capacity determination. A remand for further proceedings regarding the subjective statements of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints…"). Likewise, remand is appropriate for an ALJ to properly evaluate the lay witness testimony from Ms. Mudaliar. *See Dodrill,* 12 F.2d at 919 (remanding the matter for the ALJ to "articulate specific findings" for rejecting the testimony of the lay witness). Thus, remand for evaluation of the testimonial evidence is appropriate in this action.

**V.     Conclusion and Order**

According to 28 U.S.C. § 636(b)(1), this Court conducted a *de novo* review of the case. Having carefully reviewed the entire matter, the Court finds the ALJ failed to apply the proper legal standards in evaluating Plaintiff's subjective statements and the lay witness statement. The Court declines to adopt the recommendations, because the must be remanded for further proceedings. *See, e.g., Bunnell*, 947 F.2d at 348; *Dodrill,* 12 F.2d at 919. Thus, the Court **ORDERS**:

1. The Court declines to adopt the Findings and Recommendations (Doc. 22).
2. Plaintiff's appeal of the administrative decision (Doc. 17) is **GRANTED.**
3. The Commissioner's request to affirm (Doc. 20) is **DENIED**.
4. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.

5. The Clerk of Court is directed to enter judgment in favor of Plaintiff Shane Mudaliar and against Defendant Frank Bisignano, Commissioner of Social Security, and to close this case.

IT IS SO ORDERED.

Dated: **August 22, 2025**

_____
UNITED STATES DISTRICT JUDGE